James H. O’Connor, J.
The plaintiffs in both actions seek a judgment in the nature of an injunction enjoining the defendants herein from erecting any structure on property owned by them other than a detached single-family dwelling pursuant to certain restrictions and covenants contained in prior deeds to the property in question and ratified by an agreement entered into by the plaintiffs Wicks and a prior grantor of the defendants herein. The actions further seek judgment directing and ordering that the defendants remove the structures constructed by them prior to the institution of these actions in violation of the aforesaid restrictions and covenants. Thirdly, the plaintiffs seek damages for the alleged wrongful acts of the defendants in violating the covenants,
*736 Prior to the actual trial of these actions a motion and cross-motion were made by the parties herein for summary judgment. The plaintiffs sought summary judgment for the injunction desired and the defendants sought summary judgment dismissing the complaints and declaring the restrictions null and void. The Honorable John H. Farnham, J. S. C., by decision dated June 29, 1964 denied both motions and thereafter trial was had before this court without a jury.
Succintly stated, the facts are as follows: On October 14, 1949, one Peter F. Esposito conveyed a portion of land owned by him in former Farm Lot No. 78 of Onondaga Reservation, City of Syracuse, County of Onondaga, to Philip S. Wicks and June E. Wicks, two of the plaintiffs in one of these actions. The deed from Esposito to Wicks contained the following restrictions:
(a) That all lots in said University Manor Tract according to said maps now filed and hereafter to be filed shall be known and described as residential lots.
That no structures shall be commenced, erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than three ears which shall be attached to the dwelling or an integral part thereof, and such other outbuildings, walls and fences incidental to residential use as may be authorized and approved by the architectural committee; it being understood that one residential building plot shall mean either a lot shown on a filed map of the University Manor Tract or a plot resulting from a division of lots in said tract with a width and depth approximately the same as or greater than of either of the original lots used to make such division and in compliance with paragraph (d) below.
» * #
And it is further mutually covenanted, bargained and agreed that these covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1975, at which time said covenants shall be automatically extended for successive periods of ten years unless by a vote of the then record owners of a majority of the lots in said University Manor Tract it is agreed to change said covenants in whole or in part.
That if the parties hereto, or any of them, or their successors, heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings in law or in equity against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages or other dues for such violation.
In February of 1950 the same Peter F. Esposito conveyed a certain parcel of land contiguous to the Wicks property to Nicholas Zerrillo and Anthony Zerrillo. This property was in the same Farm Lot as that conveyed to the Wicks. The deed to Nicholas and Anthony Zerrillo contained the following restrictions: “ Subject to the conditions and restrictions contained *737 in a deed from Peter F. Esposito to Philip S. Wicks and June E. Wicks, dated October 14, 1949 and recorded in the Onondaga County Clerk’s Office on October 17, 3949 in Book of Deeds 1410, at page 52, etc. ’ ’
A few days after the conveyance of Esposito to the Zerrillos, the plaintiffs, Philip S. Wicks and June E. Wicks, entered into an agreement in writing with Nicholas Zerrillo and Anthony Zerrillo. This agreement referred to the conditions and restrictions in the deed from Esposito to Wicks and made mention of a tract known as University Manor Tract. The agreement removed the restrictions as to certain greenhouses located in the western portion of the Zerrillos’ property. However, the agreement ratified the conditions and restrictions contained in the deed from Esposito to Wicks stating: “ It is further agreed by the parties hereto that the conditions and restrictions contained in the warranty deed dated October 14, 1949 between Peter F. Esposito, as grantor, and Philip S. Wicks and June E. Wicks, as grantees, and recorded in the Onondaga County Clerk’s Office on October 17,1949, in Book of Deeds 1410, at page 52, etc., shall remain the same as contained therein except as modified by this agreement.”
There was no modification of the covenant restricting the erection of any building on the property owned by the parties to said agreement other than a single-family dwelling.
The agreement however attempted to define the so-called University Manor Tract and did so by metes and bounds although no mention in the description was made that a tract map had been filed or what lots in the alleged tract were affected by the restrictions.
Plaintiffs Wicks subsequently conveyed a portion of their premises received from Esposito to Elmer Shaw and Marian M. Shaw, the other plaintiffs, in these actions.
In 1953, Anthony Zerrillo conveyed his interest in the property acquired from, Esposito, to Nicholas Zerrillo. This deed also made mention of the restrictions and conditions contained in the deed from Peter F. Esposito to Wicks aforesaid.
In 1961, Nicholas Zerrillo conveyed a portion of his property in Farm Lot 78 to Pat Pallone Co., Inc., one of the defendants herein, containing some 2.975 acres. This deed makes no mention of the above-mentioned restrictions.
In December of 1962 a successor corporation to Pat Pallone Co., Inc. conveyed a portion of its property to the defendant, Lewiston Builders, Inc. and this deed carried the words, “ Subject to restrictions and easements of record.”
*738 On October 24, 1963, the defendants herein commenced the construction of two-family houses on the real property contiguous to the Wicks property. The defendants had prepared and filed a tract map of their property which was described as the Colvin Terrace Tract, amended. This tract consists of part of the Zerrillo property, which plaintiffs claim is bound by the restrictive covenants. At the trial it was indicated that Lots 1, 2, 3, 4, 5, 6,19, 20, 21, 22 and part of Lots 7 and 18 of the Colvin Terrace Tract, amended, were part of the alleged University Manor Tract.
The summons and complaint and the testimony before this court indicate that the plaintiffs are attempting to establish a restrictive covenant as to the use to which the defendants may put their property, under the theory that there was in existence from a prior grantor a general scheme or plan of development for the lands and property now owned by the respective parties to these actions. However, no map was ever introduced in evidence at the trial which indicated that Peter F. Esposito had in fact done anything to establish University Manor Tract except for certain preliminary sketches which he had made by one J. W. Cottrell.
Restrictive covenants may come into being and have validity in more than one way. In Korn v. Campbell (192 N. Y. 490) the Court of Appeals of the State of New York stated that covenants of this type may be broadly divided into three classes. The first class deals with the owner of a large plot or tract of land who decides to divide the land into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which those grantees may make of their property. The second class concerns itself with a grantor who restricts the use to which his grantee may put his property for the benefit and protection of the contiguous or neighboring lands which the said grantor retains. The third class of cases involves a mutual agreement or covenant between owners of adjoining lands in which the restrictions inserted are for the corresponding benefit of the agreeing parties.
On the motion for summary judgment, Honorable John II. Fakuham, J. S. 0., indicated from the papers submitted to him that the so-called University Manor Tract referred to in the Esposito to Wicks deed never went beyond the state of contemplation. He indicated that no tract map was ever filed and no lots were sold pursuant to the planned University Manor Tract. This court can emphatically state that there was no eyiden.ee introduced at the trial to refute that decision. It *739 was not proved by the plaintiffs that the alleged University Manor Tract ever came into being and in fact, a witness for the defendants, one Jack W. Cottrell, testified that he made certain pencil sketchings or overlays in 1948 showing how the area in question might be subdivided. He testified that this was done on a sketch made by his father, J. W. Cottrell, in 1942, which involved the property in question. It was an unnamed piece of paper with no title and was never taken to the Planning Commission. Furthermore, there was no testimony that any lot in the alleged University Manor Tract had ever been sold or conveyed pursuant to it.
Lastly, there was no evidence of the existence of any architectural committee or that one ever met.
Therefore, these restrictions have no validity under any theory that they were placed in the original deed from Esposito to Wicks pursuant to a common plan or scheme of development. Certainly the property conveyed to Wicks was not part of any uniform scheme of development since the metes and bounds description of that property varies in size and dimension. In fact the size of the lot conveyed to plaintiffs Shaw varies from the size of that conveyed to Wicks. (Bristol v. Woodward, 251 N. Y. 275.)
This court is further of the opinion that the restrictions in the deed from Esposito to Wicks do not fall into the second class of cases. There was no proof at the trial or any evidence submitted to this court to show that the purpose of the restrictions was for the benefit of the lands retained by Esposito.
However, while this court finds no validity in the restrictive covenants contained in the Esposito-to-Wicks deed for the purpose of sustaining the restrictive covenants involved herein, the court does find validity in the restrictive covenants as contained in the agreement between Wicks and Zerrillos, which agreement by reference ratified and reaffirmed the restrictive covenants in the Esposito-to-Wicks deed as to the construction of one-family dwellings on the adjoining property. Therefore, this agreement between Wicks and Zerrillos does establish a valid restrictive covenant and said covenant falls within the third class of cases as delineated in Korn v. Campbell (supra).
The enforcement of the covenant is however another question. Has there been such a change in the surrounding neighborhood that the granting of injunctive relief would be unjustified and unconscionable1? It has been well established in the State of New York that equitable relief will not be decreed where there has been a change in the character of the neighborhood so that the enforcement of the restriction would become an oppression *740 to other landowners in the area. (Trustees of Columbia Univ. v. Thacher, 87 N. Y. 311; McClure v. Leaycraft, 183 N. Y. 36; Forstmann v. Joray Holding Co., 244 N. Y. 22.) Honorable Johst H. Fabetham, J. S. C., in his decision on the motion for summary judgment denied injunctive relief to the plaintiffs since he determined that there was such a change in the character of the neighborhood that it would be inequitable and unjust to grant it. Furthermore, he denied injunctive relief on the ground that the plaintiffs were chargeable with laches in not seeking an injunction 'before the defendants had invested so much money and time in the development of their tract. Therefore, this decision is the law of this case. However, this court upon stipulation of the parties made a view of the premises and the surrounding area and concluded that there had been such a change in the character of the neighborhood that enforcing the restriction in equity would be oppressive and give no substantial benefit to the plaintiffs. This court notes that immediately to the west of the plaintiffs’ property there have already been constructed two-family dwellings which immediately adjoin the rear boundary lines of the plaintiffs’ property. Moreover, the entire area to the west on Hughes Place North has numerous two-family houses either completed or in the course of completion. This court is also aware of the testimony of the witnesses that the area is now designed for two-family houses and in the immediate vicinity there are apartment houses.
Still, there is a technical violation of the restrictive covenant contained in the agreement between Wicks and Zerrillos. While injunctive relief is hereby denied in accordance with the above reasons, the court must still answer the question whether the plaintiffs have suffered any damage by reason of a breach of such covenant.
The testimony of the witnesses is conflicting and in fact diametrically opposed as to the value of the plaintiffs’ property for resale and without the restriction in effect. The expert witness for the plaintiffs testified that plaintiffs Shaws ’ property was worth $8,000 with the restriction enforced but only $3,000 if two-family houses could be built in the area. He further testified that the plaintiffs Wicks’ property would be worth $17,000 with the restriction enforced and $7,000 without it. On the other hand, the witnesses for the defendants testified that without the restrictions the lots would be worth approximately $6,000 apiece and with the restriction approximately $3,300 apiece. Therefore, the lot of the plaintiffs Slmvs was worth approximately $2,700 more Avith the restriction violated *741 and the two lots of the plaintiffs Wicks were worth $5,400 more with the restriction violated.
In the face of conflicting testimony this court must determine as the trier of the fact what the damages are to be* In Ackerman v. True (175 N. Y. 353) the proper measure of damages is set forth in an action similar to these. That measure is the difference between the value of the property before the injury or violation and the value of the property subsequent thereto. This court is not satisfied that the property is worth more with the restriction removed than it is with the restriction in full force and effect. Common sense and common understanding would indicate that the plaintiffs have sustained a loss because of the violation of the restriction. The amount of the loss is difficult to determine since the plaintiffs have not offered into evidence anything more than the opinion of a real estate expert as to what the value was with and without the restriction. It is a commonly accepted norm, of which this court is aware, that property in areas restricted to one-family dwellings is more desirable and will bring a greater price on the market than property not so restricted. This court is further cognizant that such is the general intent behind the zoning laws. Therefore, harm has been inflicted upon these plaintiffs by reason of the violation of the restriction by the building of two-family houses across the street from their property and in the next block. However, it was not sufficiently developed at the trial upon examination of the plaintiffs’ expert witness whether he took into account the fact that there were also two-family houses immediately adjoining to the west of the plaintiffs’ property in arriving at his appraisal figure. In other words, has there already been a diminution in the value of the property because of the two-family houses in an area not bound by the restriction but equally as close to and adjoining the plaintiffs’ property?
It is this court’s finding from the testimony that the plaintiffs’ expert witness was taking into consideration the entire area in arriving at his valuation, and that both the two-family houses sought to be restricted and those to .the west of that area equally contributed to the loss suffered by the plaintiffs. Therefore, since the plaintiffs Shaw suffered a diminution in the value of their property according to the expert witness on behalf of the plaintiffs in the amount of $5,000, apportioning that loss at 50% attributable to the defendants herein, the restrictive casements may be declared to be extinguished pursuant to section 1951 of the Real Property Actions and Proceedings Law upon the payment by the defendants of the sum of $2,500 to the plaintiffs Shaw. It is further the judgment of *742 this court that damages suffered by the plaintiffs Wicks are 50% attributable to the defendants herein and that the restrictive covenant may be extinguished pursuant to section 1951 of the Real Property Actions and Proceedings Law upon the payment by the defendants to the plaintiffs, Wicks, of the sum of $5,000. Submit judgment, accordingly.