**James D. Albright and Edna I. Albright v. John A. Fish, Cheryl Fish, William Miller, Marion C. Miller, Ernest Paul Sachs, Marlene Sachs, Peter R. Teachout and Mary M. Teachout**

[422 A.2d 250]

No. 408-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

September 8, 1980

Motion for Reargument Denied as Not Being Timely Filed, V.R.A.P. 40, September 24, 1980

Appellees' Motion for Enlargement of Time Denied September 30, 1980

Norris H. Hoyt, Jr., and Peter R. Teachout, Norwich, for Plaintiffs.

Garfield H. Miller of Black & Plante, Inc., White River Junction, for Defendants.

Hill, J. This appeal and cross-appeal represent another chapter in a dispute we heard but one year ago. The facts of the case are set out at length in *Albright* v. *Fish,* 136 Vt. 387, 394 A.2d 1117 (1978), and it would serve no useful purpose to dwell on them here. Suffice it to say for the purposes of this opinion that cross-defendants, Millers, were held liable for breach of a restrictive land covenant running in favor of cross-plaintiffs, Sachs and Teachouts. By its terms, the covenant prohibited all subsequent grantees in the chain of title from a common grantor from subdividing their respective holdings

into parcels of less than ten acres. The issue with which we are confronted today is the proper measure of damages for the breach of that covenant.

Cross-plaintiffs claim that the lower court "erred in holding that the proper measure of compensatory damages for breach of a real property covenant is the decrease in the fair market value of the covenantees' property proximately caused by the breach." Since they ultimately purchased the parcel that was illegally subdivided (the offending parcel), cross-plaintiffs claim that the proper measure of damages is their "actual losses." They include in these "actual losses" the following: (1) all costs and expenses incurred in removing and extinguishing the "encumbrance" placed on their property rights by the violation of the covenant; (2) all costs and expenses incurred in defending and maintaining their rights under the restrictive covenant, including litigation costs and attorney's fees; and (3) all damages and costs suffered in consequence of the breach, including compensation for hardships and dislocations. In addition, cross-plaintiffs claim that they are entitled to exemplary damages because the breach was intentional and in bad faith, and that they are entitled to an amount equal to the property taxes that they will have to pay on the offending parcel over the term of the fifty-year covenant.

We have been unable to find any Vermont case that discusses the measure of damages for breach of a restrictive covenant, and, not surprisingly, there is little case law from other jurisdictions regarding the issue. This is due no doubt to the fact that covenants containing building or subdivision restrictions "are purely negative in character; and since they are for the protection of property values in the community, the normal remedy sought for enforcement is an injunction in equity." 2 American Law of Property § 9.13, at 376 (A. J. Casner ed. 1952). Nevertheless, as with any promise, a breach of a restrictive covenant entitles "the aggrieved person to recover at law a judgment for damages," 5 R. Powell, The Law of Real Property ¶ 671, at 145 (P. Rohan rev. ed. 1979), regardless of whether that party would have been entitled to injunctive relief had he chosen that course, *Borssuck* v. *Pantaleo*, 183 Md. 148, 154, 36 A.2d 527, 530 (1944).

The courts of New York and Oregon appear to be the only tribunals that have given the subject a considered analysis, and they invariably have held that the proper measure of damages for breach of a restrictive covenant is the difference between the fair market value of the benefited parcel before the breach and the fair market value of the benefited parcel after the breach. See *Flynn* v. *New York, W. & B. Ry.*, 218 N.Y. 140, 112 N.E. 913 (1916); *Ackerman* v. *True*, 175 N.Y. 353, 67 N.E. 629 (1903); *Binghamton Plaza, Inc.* v. *Gilinsky*, 32 App. Div. 2d 994, 301 N.Y.S.2d 921 (1969); *Wicks* v. *Pat Pallone Co.*, 48 Misc. 2d 734, 265 N.Y.S.2d 732 (Sup. Ct. 1965); *Drulard* v. *LeTourneau*, 286 Or. 159, 593 P.2d 1118 (1979); *Alloway* v. *Moyer*, 275 Or. 397, 550 P.2d 1379 (1976); cf. *Thompson* v. *Smith*, 119 Vt. 488, 129 A.2d 638 (1957) (modified application of difference in value measurement of damages for violation of zoning ordinance). But see *Stauber* v. *Granger*, 495 P.2d 67 (Alaska 1972) (award of damages based on loss of enjoyment not so clearly erroneous as to require reversal). Despite this authority, however, cross-plaintiffs ask us to hold that the decrease in the fair market value caused by the breach is not the proper measure. Cross-plaintiffs claim that because they negotiated a settlement with the grantees of cross-defendants, whereby cross-plaintiffs purchased the offending parcel, any diminution in fair market value as a result of the breach was avoided. Therefore, they seek damages for all their costs and expenses in pursuing that course. We do not believe that cross-plaintiffs in pursuing a remedy which was not the normal or ordinary remedy have fixed their measure of damages as actual out-of-pocket expenses that are related in any manner to this dispute.

We are not led to a contrary conclusion by the long line of cases cited to us by cross-plaintiffs which hold that a party may recover for the damage he has sustained as a direct result of the breach and "for the damage he has sustained in consequence of the breach of the covenant, [including] such costs and expenses as he has fairly and in good faith incurred in attempting to maintain and defend his title." *Smith* v. *Sprague*, 40 Vt. 43, 46 (1867). See also *Keeler* v. *Wood*, 30 Vt. 242 (1858); *Turner* v. *Goodrich*, 26 Vt. 707 (1854); *Pitkin* v. *Leavitt*, 13 Vt. 379 (1841); *Park* v. *Bates*, 12 Vt. 381 (1840); *Richardson* v. *Dorr*, 5 Vt. 9 (1833). All of those cases involved

a breach of one of the covenants for title, *i.e.*, covenant of seisin, covenant against encumbrances, or covenant of warranty, as opposed to a breach of a restrictive covenant. Covenants for title are very different in nature, purpose and effect from restrictive covenants, although they share the same general designation. See 6A R. Powell, *supra*, at ¶¶ 904–911. The measure of damages for a breach of a covenant for title is that to which plaintiff has called our attention, and generally includes consequential damages for attorney's fees, costs, interest, and money spent to avoid damage from a breach. See *id*. But the mere fact that two very different legal concepts share the same generic name does not inexorably lead us to the conclusion that the measure of damages for a breach of either is the same.

■ As applied to the facts of this case, we believe that the proper measure for the damages which flowed directly from the breach is the difference in fair market value of cross-plaintiffs' parcels before the breach of the restrictive covenant and the fair market value of their parcels after the breach had they chosen not to purchase the offending parcel. This measure, in our opinion, fairly compensates cross-plaintiffs for the damage to their expectancy interest, to the extent money can do so. This is not to say, of course, the cross-plaintiffs could not have obtained equitable relief had they pursued that avenue. See *McDonough* v. *W. W. Snow Construction Co.*, 131 Vt. 436, 306 A.2d 119 (1973); *Welch* v. *Barrows*, 125 Vt. 500, 218 A.2d 698 (1966); *Queen City Park Association* v. *Gale*, 110 Vt. 110, 3 A.2d 529 (1938).

■ The lower court found, and our review of the record confirms, that there was no evidence introduced regarding the diminution in fair market value, if any, of cross-plaintiffs Sachs' or Teachouts' land. Therefore, as to this element, cross-plaintiffs have failed to prove their damages. Nevertheless, where, as here, an invasion of a property right is established, the law "requires some recognition, even if only by way of nominal damages." *Clark* v. *Aqua Terra Corp.*, 133 Vt. 54, 58, 329 A.2d 666, 668 (1974). It remains to be determined, however, whether cross-plaintiffs are entitled to recover the other elements of damages they seek.

590

█ It is the accepted rule in Vermont that when a contract is breached the aggrieved can recover not only direct or general damages for the losses that naturally and usually flow from the breach itself, *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.*, 123 Vt. 130, 136, 183 A.2d 230, 236 (1962), but he may also recover special or consequential damages. Recovery of consequential damages is, of course, subject to the limitations of causation, certainty and forseeability. *Id.* See also *Berlin Development Corp.* v. *Vermont Structural Steel Corp.*, 127 Vt. 367, 250 A.2d 189 (1968); see generally D. Dobbs, *Handbook on the Law of Remedies* § 12.3 (1973). Moreover, these rules are equally applicable where, as here, an aggrieved party seeks consequential damages for breach of a promise to use certain land in a particular way. See Restatement of Property § 528 (1944).

Cross-plaintiffs claim that the interest they will have to pay on the money borrowed to purchase the offending parcel and the future property taxes they will have to pay on that parcel are recoverable consequential damages. We disagree, since we do not believe that these alleged elements of damages meet the test of foreseeability.

█ Consequential damages are recoverable where they "may be reasonably supposed to have been in the contemplation of both parties[,] at the time they made the contract, [as the probable result of the breach of it]." *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.*, *supra* (quoting *Hadley* v. *Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854)). This rule is but a manifestation of the generally accepted policy that some outer limit must be placed on recovery. And, it is our opinion that damages for interest to be paid on cross-plaintiffs' loans and for future property taxes to be paid on the offending parcel fall outside the limits of recovery in the present case, since they are not the type of damages that ordinarily would be considered to result from a breach of a restrictive land covenant.

█ Cross-plaintiffs' claims for attorney's fees and litigation costs must also fail. The general rule in Vermont is that "the burden of the general expense of the litigation is not recoverable as an element of damage[, but rather] [i]t is a burden which each litigant must bear unless he is relieved of

the cost by statute or contract." *Loeb* v. *Loeb*, 120 Vt. 489, 496, 144 A.2d 825, 830 (1958). As cross-plaintiffs point out in their brief, however, there is one notable exception to the general rule. There is a substantial body of case law which holds that where the wrongful act of one person has involved another in litigation with a third person or has made it necessary for that other person to incur expenses to protect his interests, litigation expenses, including attorney's fees, are recoverable. See, e.g., *Corace* v. *Balint*, 418 Pa. 262, 210 A.2d 882 (1965); *Armstrong Construction Co.* v. *Thomson*, 64 Wash. 2d 191, 390 P.2d 976 (1964); *Hiss* v. *Friedberg*, 201 Va. 572, 112 S.E.2d 871 (1960). See generally Annot., 4 A.L.R.3d 270 (1965). The rule in Vermont that attorney's fees and litigation costs are recoverable by a purchaser of real property when a breach of a covenant for title by his vendor involves him in litigation with a third party is but one application of this exception. See, e.g., *Smith* v. *Sprague*, *supra*. Whether we should extend the exception to cover situations where breach of a restrictive covenant or of a contract involve the aggrieved party in litigation with a third person is a question we need not decide, however, for assuming that the exception does apply in those situations, we do not believe that the present case falls within the exception.

In *Armstrong Construction Co.* v. *Thomson*, *supra*, the Washington Supreme Court made the following observation:

> The fulcrum upon which the [exception] balances, then, is whether the action, for which attorney's fees are claimed as consequential damages, is brought or defended by third persons—that is, persons not privy to the contract, agreement or events through which the litigation arises.

64 Wash. 2d at 196, 390 P.2d at 979. In the present case, the Millers, the Albrights, the Sachs, and the Teachouts were all privy to the restrictive covenant. See *Albright* v. *Fish*, *supra*. Therefore, none could be considered third parties, and the litigation that resulted among them does not fall within the exception to the general rule governing attorney's fees. See *Manning* v. *Loidhamer*, 13 Wash. App. 766, 538 P.2d 136 (1975).

■■ Lastly, cross-plaintiffs claim that they are entitled to exemplary damages since cross-defendants' violation of the restrictive covenant was intentional and in bad faith. Exemplary damages generally are not recoverable in actions for breach of contract, unless "the breach has the character of a wilful and wanton or fraudulent tort." *Clarendon Mobile Home Sales, Inc.* v. *Fitzgerald*, 135 Vt. 594, 596, 381 A.2d 1063, 1065 (1977). And since breach of a restrictive covenant, like breach of a contract, involves the failure to make good on a promise, we see no good reason why the same rule should not be applied here.

In concluding that the cross-plaintiffs were not entitled to exemplary damages, the lower court made the following finding:

> 22. There was no evidence of deliberate bad faith on the part of Cross-Defendants since there was a close legal issue (ultimately determined on appeal by reversal of the trial court) as to whether the Cross-Plaintiffs had standing to assert the benefits of the covenant and as to whether the original grantors' "quitclaim release" was sufficient to terminate the burden of the covenant.

Our review of the record reveals that this finding is amply supported by the evidence, see V.R.C.P. 52, and, therefore, that the denial of cross-plaintiffs' claim for exemplary damages was proper. This follows because "the facts in this case do no more to establish a bad *motive* than would those of any case in which a party to an agreement breached his promise and, though given the opportunity, failed to cure that breach." *Clarendon Mobile Home Sales, Inc.* v. *Fitzgerald, supra* (emphasis in original).

*The judgment of the lower court is reversed, and the cause remanded with directions to enter a judgment for the cross-plaintiffs in the amount of $1.00 only, plus allowable costs in that court. Costs in this Court to the cross-defendants.*