Gramatan Home Investors Corp.; The Gramatan Company (A Division of Home Investors Trust); and Jonah Goldstein, d/b/a Home Investors Company v. Richard and Patricia Starling, Raymond and Eva Cole, Daisy Hall and Nicholas and Sandra Martocci

[470 A.2d 1157]

Nos. 82-148, 82-149, 82-150 and 82-151

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed November 1, 1983

*Smith & Craven*, Brandon, for Plaintiffs-Appellants.

*Sam Farrington, Vermont Legal Aid, Inc.*, Rutland, for Defendants-Appellees.

**Billings, C.J.** Plaintiffs appeal, and defendants cross-appeal from final judgment and the denial of their post-judgment motions by the Rutland Superior Court. Following a joint hearing on the merits, the court dismissed plaintiffs' complaint for moneys due and owing on promissory notes executed by the

defendants and found for the defendants on those parts of their counterclaims seeking restitution of moneys paid on the notes and cancellation of the notes, home mortgages and sales contracts entered into with plaintiffs' assignor. The court denied plaintiffs' post-judgment motion for a new trial and defendants' post-judgment motions to amend the court's findings, conclusions and judgment orders.

On appeal, plaintiffs argue that the evidence heard by the trial court does not support the court's findings of fact and conclusions of law that: (1) defendants' defenses of fraud are good against plaintiffs and the existence of fraud renders defendants' promissory notes unenforceable; (2) there was a total failure of consideration between the seller/assignor and each of the defendants, and such failure is a good defense against the claims of the plaintiffs/assignees; (3) under federal Truth in Lending regulations the defendants effectively rescinded the transactions entered into with the seller and are therefore discharged from any obligation owed to plaintiffs on the promissory notes; and (4) the defendants' notices of rescission are likewise effective under Vermont's Consumer Fraud Act, 9 V.S.A. §§ 2451–2462. In their cross-appeals, defendants aver that the superior court erred in not awarding them civil penalties and reasonable attorney's fees as provided for in 9 V.S.A. § 2461 of the Vermont Consumer Fraud Act.

Home Investors Trust (HIT) was engaged in the business of purchasing and financing home improvement transactions. Jonah Goldstein was chairman of HIT. After its 1975 dissolution, HIT's assets were sold to Goldstein doing business as Home Investors Company (HIC). Through its agent, plaintiff Gramatan Home Investors Corp. (GHIC), of which Goldstein was sole stockholder, HIC continued to operate the business of HIT, that is, the discounting and collection of home improvement obligations. All the plaintiffs operated from the same location in the state of New York. Vinyl Distributors, Inc. (Vinyl), not a party to this action, sold and installed vinyl home siding in Vermont during 1973 and 1974. Vinyl was an "Approved Dealer" with HIT, meaning that HIT would purchase and finance home improvement obligations entered into by customers of Vinyl. Four of Vinyl's obligations, purchased by HIT and subsequently assigned to GHIC upon HIT's dissolution, were the defendants'.

Testimony at trial revealed that each defendant experienced a similar sales approach used by Vinyl Distributors in its endeavor to sell vinyl siding. Vinyl's agent, accompanied by an associate, would appear at a defendant's door, the defendant having done nothing to invite the solicitation (all the defendants were approached by the same agent and his associate). Once inside, the agent told the defendant of the financial, structural, ecological and aesthetic benefits of vinyl siding. The agent guaranteed the structural qualities of the siding and warranted that installation would be accomplished in a workmanlike manner. The agent solicited personal financial information from the defendant and assured the defendant that financing could be arranged through Vinyl and be tailored to the defendant's economic means. As an added inducement, the agent suggested that the defendant allow Vinyl to use the defendant's house as a model home: in return for allowing Vinyl to place a Vinyl Distributors, Inc. sign on the defendant's front lawn and to take before-and-after pictures of the defendant's house for future sales use, the defendant would be given a reduction in the price of the siding.

Once a defendant agreed to purchase the siding, the agent showed the defendant a sales contract attached to a clipboard. After the defendant finished reading the contract, the agent would take back the clipboard. Thereupon, the agent's associate would position himself between the defendant and the agent and proceed to demonstrate the structural qualities of the siding and show the various colors of siding available. After this demonstration, the agent would present the clipboard, with the sales contract on top of a number of other papers, to the defendant for signing. After the defendant signed the top sales contract, the agent would expose the signature lines on the underneath documents for the defendant to sign, explaining that the underlying documents were copies of the top sales contract. During the time it took for a defendant to sign the contract and copies, the agent retained hold of the clipboard and documents.

Installation of the siding generally began the day following the agent's visit. Each defendant made monthly payments directly to HIT, and subsequently to GHIC, using payment coupon books supplied by HIT. Defendants' homes were never used as model homes by Vinyl. Subsequent to the installation

of the siding on defendants' homes, each of the defendants experienced similar problems with the siding (improperly installed vapor barriers between the siding and the house resulting in collection of moisture; inadequate nailing of the siding to the house so that various siding panels became detached; blistered and cracked siding). Complaints made by each of the defendants over a period of a year and a half, to both Vinyl and HIT, went unanswered. Sometime during this period Vinyl's telephone was disconnected and no new listing was provided for it. Also during this time, each of the defendants became aware that HIT had recorded assignments and mortgages on their homes. As was established at trial, the documents signed by the defendants, with the agent's express assurance that they were copies of the sales contract, were actually credit applications, retail installment contracts, notices of right of rescission, promissory notes and home mortgages. Defendants, none of whom had more than a high school education or its equivalent, never received copies of the notes and mortgages which they had unknowingly signed, nor did they receive notices of their right to rescind the sales transaction until past the time allowed for rescission as provided for in 9 V.S.A. § 2454(a)(1).

This Court has repeatedly held that findings rendered by the trial court will not be set aside unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous. V.R.C.P. 52(a); *Blanchard* v. *Villeneuve*, 142 Vt. 267, 269, 454 A.2d 1235, 1236 (1982); *Cliche* v. *Cliche*, 140 Vt. 540, 541, 442 A.2d 60, 61 (1982). It is within the purview of the trier of fact to determine the weight of the evidence, the credibility of the witnesses and the persuasiveness of the testimony, *Trudeau* v. *Conway*, 139 Vt. 167, 168, 423 A.2d 854, 856 (1980), and to accept or reject any of that testimony. *Thibault* v. *Vartuli*, 143 Vt. 178, 465 A.2d 248 (1983). Reviewing the record, we decline to disturb the findings of the superior court. The court found that defendants' installment sales contracts and the credit instruments executed to finance them were "fatally tainted with fraud." The record clearly discloses that Vinyl, plaintiffs' assignor, made fraudulent representations relating to the nature and quality of the vinyl

siding. These misrepresentations were reasonably relied on by the defendants and induced their agreement to purchase the siding. Additionally, the court found that defendants were tricked into signing instruments imposing debt obligations to which defendants had never consented. Plaintiffs' contention that the defense of fraud cannot stand because they are holders in due course, 9A V.S.A. § 3—305, is without merit. The court correctly found that, irrespective of plaintiffs' status under the Uniform Commercial Code, 9A V.S.A. § 3—305, as purchasers of consumer paper executed in connection with a consumer contract they hold defendants' promissory notes "subject to all defenses . . . which would be available to the consumer in an action on a simple contract . . . ." 9 V.S.A. § 2455; *Randolph National Bank* v. *Vail*, 131 Vt. 390, 308 A.2d 588 (1973). In addition to the defense of fraud, the court found a total failure of consideration. This finding is also amply supported by the record. Contrary to the express warranties given by Vinyl's agents, the siding was defective and the installation on defendants' homes was not performed in a workmanlike manner. Under 9 V.S.A. § 2455 the defense of failure of consideration is good against the plaintiffs.

Defendants also claim that they lawfully rescinded the credit transactions under both federal Truth in Lending provisions, 15 U.S.C. §§ 1601–1635, and Vermont's Consumer Fraud Act, 9 V.S.A. § 2451. Under 15 U.S.C. § 1635 an obligor in a consumer credit transaction, in which a security interest is acquired on the obligor's principal dwelling place, has three days to rescind the credit transaction following delivery of the full disclosure of credit terms. 15 U.S.C. § 1635(a). When these disclosures are not provided, the right to rescind continues for three years from the date of the transaction. 15 U.S.C. § 1635(f); *Dougherty* v. *Hoolihan, Neils, & Boland, Ltd.*, 531 F. Supp. 717, 721 (D. Minn. 1982). The record shows that the requisite disclosures were never properly provided to the defendants; defendants' notices of rescission, given at the time of the institution of this action, were timely. 15 U.S.C. § 1635(f). Similarly, Vermont's Consumer Fraud Act gives a right of cancellation to a consumer in a home solicitation sale. 9 V.S.A. § 2454(a)(1). The seller is required to furnish a notice of cancellation at the time of the credit transaction, 9

V.S.A. § 2454(b)(2), and the consumer's right to cancel continues until the seller is in compliance with 9 V.S.A. § 2454(b)(2). 9 V.S.A. § 2454(b)(3). The court properly found that plaintiffs failed to comply with the disclosure requirements under 9 V.S.A. § 2454, and therefore defendants' notices of cancellation were lawful. Our review of the record affirms the findings of the trial court.

Addressing defendants' cross-appeals, defendants argue that under 9 V.S.A. § 2461 they are entitled to a civil penalty which was coincidentally computed to be equal to the amount of consideration paid by each defendant, in lieu of damages and in addition to the restitution and cancellation of the notes and mortgages allowed by the court below. The superior court disallowed defendants' claim for civil penalties, finding that § 2461 was not intended to permit a consumer to collect a penalty equal to the consideration paid when that consideration had been restored through restitution.

■ While we agree with the court's denial of an award of civil penalties, we do not agree with its analysis of § 2461. No reference is made in § 2461 to a civil penalty that is recoverable by an injured consumer. Section 2461(a) provides for the recovery of a civil penalty, payable to the state, upon petition of the attorney general, against any person who violates the terms of an injunction issued pursuant to 9 V.S.A. § 2458(a). Under this section, the attorney general is empowered to bring an action, in the name of the state, to restrain, by temporary or permanent injunction, any person from using an unfair or deceptive commercial practice or act. Section 2458(b)(1) provides for the imposition of a civil penalty for each violation of § 2458(a) when requested by the attorney general or a state's attorney.

■ In contradistinction to the civil remedy available to the state, as a plaintiff in a consumer fraud case under § 2461(a), § 2461(b) is directed toward providing an award of equitable relief and damages or restitution, attorneys' fees and exemplary damages to an injured consumer who is the plaintiff in a consumer fraud action. When first enacted in 1969, § 2461(b) allowed for the recovery, by a consumer, of a "penalty" of not more than $1,000. 1969, No. 45, § 7. This was amended in 1972

to delete the recovery of a "penalty" by the consumer, substituting in its stead recovery of treble damages and attorney's fees. 1971, No. 235 (Adj. Sess.), § 2.

A review of similar consumer fraud provisions from neighboring jurisdictions demonstrates this same distinction between a civil penalty, which is available to the state, and damages or restitution which are recoverable by an injured consumer. See, e.g., Me. Rev. Stat. Ann. tit. 5, §§ 209, 213 (1964) (civil penalty, payable to state, for violations of injunctions to restrain unfair or deceptive practices; remedies of restitution and other equitable relief available to person injured by deceptive practice); N.J. Stat. Ann. §§ 56:8-3.1, 56:8-13, 56:8-19 (West 1964) (penalty, payable to state, for consumer fraud violations; person who suffers from consumer fraud may sue for legal or equitable relief, exemplary damages and attorneys' fees); N.Y. Gen. Bus. Law §§ 349, 350-c (McKinney 1968) (person who engages in unfair act or practice liable for civil penalty which shall accrue to state; person injured by unfair practice may recover actual and treble damages); R.I. Gen. Laws §§ 6-13.1-5.2, 6-13.1-8 (1969) (consumer fraud violator shall pay civil penalty to state; person injured by consumer fraud may recover actual and punitive damages). In the case at bar, the state was not the moving party in this cause of action; therefore, the court properly denied the award of civil penalties.

Defendants also take issue with the superior court's denial of their request for reasonable attorney's fees, arguing that such an award is either required by § 2461(b), or alternatively ought nevertheless to be awarded as essential to the fulfillment of the legislative policy behind consumer protection laws.

In general, Vermont follows what has been referred to as the "American" rule, requiring each party to bear his or her own general costs of litigation. *State* v. *Whitingham School Board*, 140 Vt. 405, 407, 438 A.2d 394, 396 (1981). The burden of bearing one's individual costs, however, may be relieved by statute or contract. *Albright* v. *Fish*, 138 Vt. 585, 590–91, 422 A.2d 250, 254 (1980).

We do not read 9 V.S.A. § 2461(b) as placing the award of attorney's fees within the discretion of the trial court. The statute expressly provides that a consumer "may sue and re-

cover . . . reasonable attorney's fees . . . ." 9 V.S.A. § 2461 (b). In *Fraser* v. *Choiniere*, 133 Vt. 631, 350 A.2d 755 (1975), we had occasion to comment upon the provision for attorney's fees in § 2461 (b). There we stated that the question of attorney fees was "a statutory element of damages under 9 V.S.A. § 2461 (b)" to be recovered upon a finding that the consumer fraud laws have been violated. *Id.* at 636–37, 350 A.2d at 759.

In addition, this Court is mindful of the legislative intent behind Vermont's consumer fraud laws. Those laws were passed to protect this state's citizens from unfair and deceptive business practices and to encourage a commercial environment highlighted by integrity and fairness. 9 V.S.A. § 2451. The relief available under § 2461 (b) to a consumer who has been victimized by an unfair or deceptive commercial practice was fashioned in order to promote and encourage prosecution of individual consumer fraud claims. *Wilder* v. *Aetna Life & Casualty Insurance Co.*, 140 Vt. 16, 18, 433 A.2d 309, 310 (1981). The interests of both the business community and the public at large are best served by shifting the burden of the expense of consumer fraud litigation onto the shoulders of those whose unfair or fraudulent acts are responsible for the litigation in the first place.

*Affirmed as to that part of the superior court's order granting restitution and cancellation of the contracts, notes and mortgages between the defendants and Vinyl Distributors, Inc., and denying defendants an award of civil penalties; reversed as to that part of the order denying defendants reasonable attorney's fees and remanded for further hearing to determine the amount of said fees.*