### Stephen WYATT and Donna Wyatt v. Warren PALMER and Courtney Palmer

[683 A.2d 1353]

No. 94-608

August 1, 1996. Defendants Warren and Courtney Palmer appeal a judgment in favor of plaintiffs Stephen and Donna Wyatt in a breach of contract action that arose out of a sale of real property. We affirm in part and reverse in part.

Defendants own Palmer Real Estate Development. They construct new homes for resale on properties that they buy and subdivide. In July 1990 the Wyatts agreed to buy a new home from the Palmers on lot 39 of the Foothills Development, and the parties executed a purchase and sale agreement to that effect. The purchase and sale agreement included a default clause which read, in part, "In the event legal action is instituted arising out of a breach of this contract, the prevailing party shall be entitled to reasonable attorney's fees and court costs."

In August 1990, when the house was substantially complete, the Palmers delivered a warranty deed conveying the house and lot 39 to the Wyatts, and promising to warrant and defend title against all lawful claims. About a year later, the Langes, owners of adjacent lot 38, notified the Wyatts of a possible boundary encroachment. A surveyor hired by the Langes had discovered that the boundary between the properties ran through the Wyatts' driveway and garage.

Before constructing the Wyatts' house, Warren Palmer had discussed the location of the boundary with the Langes' predecessor in title. Although Mr. Palmer expressed some doubt about the location of the boundary, he did not commission a survey to locate it accurately. Instead, he and the Langes' predecessor agreed that the line ran just beyond a row of trees, some forty feet from the subsequent location of the Wyatts' garage. Mr. Palmer pointed to this same line when he described the boundaries of lot 39 to the Wyatts, indicating that the trees fell within the lot.

In September 1991, the Wyatts' counsel notified the Palmers' counsel that the Wyatts expected the Palmers to indemnify them for expenses incurred in resolving any dispute with the Langes. This notice was repeated in October 1991 and January 1992.

In November 1991, the Langes instituted an action seeking to eject the Wyatts and to obtain damages from the Palmers. In answer to the complaint, the Palmers denied building plaintiffs' home on the Langes' property. They did not answer on behalf of the Wyatts or take any action to defend their title.

Before this action was filed, Mr. Palmer had disputed the results of the Langes' survey. He claimed he had engaged a surveyor to locate the boundary. In response, the Langes commissioned another survey, which confirmed the results of the prior one. When, as of March 1992, Palmer had not produced any survey results, the Wyatts wrote to his counsel saying that they would be forced to hire a surveyor if he did not.

In July 1992, the Wyatts' counsel wrote to the Palmers' counsel stating that, because they had produced no survey results to rebut the Langes' claim, the Palmers could not justifiably refuse to pay for the Wyatts' defense. Subsequently, the Wyatts filed a cross-claim against the Palmers.

In January 1994, the Palmers paid the Langes $3000 to settle their claim with the Wyatts. As part of the settlement, the Langes attempted to convey a parcel that extended from the actual boundary of lot 39 to the boundary line that Mr. Palmer had shown to the Wyatts. The Wyatts elected to accept only enough of the parcel to resolve the encroachment issue, because accepting the entire parcel would have entailed granting the Langes a septic easement. Furthermore, the unaccepted portion of the parcel would have been of little use to the Wyatts, because the presence of the easement foreclosed the possibility of expanding their home or otherwise developing that area. Thus, after the settlement, lot 39 was .09 acres smaller than Mr. Palmer had initially described it to be.

After settling with the Langes, the Wyatts pursued their cross-claim against the Palmers. A special master was appointed to assist the court. The master recommended judgment for the Wyatts and an award of attorney's fees, costs and damages totaling $23,801.13 plus interest. The trial court adopted the master's findings and conclusions. This appeal followed.

On appeal, the Palmers argue that they adequately defended the Wyatts' title, and that they should be relieved of the obligation to indemnify the Wyatts for litigation expenses because the Wyatts filed a cross-claim against them. The Palmers also argue that the court erred in finding them liable under several theories and in awarding the Wyatts damages for land not received, litigation expenses incurred in their cross-claim against the Palmers, lost opportunity to refinance a home mortgage, and interest on a line of credit used to finance litigation. The Wyatts cross-appeal, contending that the court erred in concluding that defendants were not liable for fraudulent misrepresentation, and in denying punitive damages.

## I.

The findings of a special master, once adopted by the court, "have the same force and effect as findings of the court." *Darling v. Ennis*, 138 Vt. 311, 314, 415 A.2d 228, 230 (1980); V.R.C.P. 53(e). "'Upon appellate review we will not interfere if a reasonable evidentiary basis supports the court's findings and the findings are sufficient to support the conclusions of law . . . .'" *Bartley-Cruz v. McLeod*, 144 Vt. 263, 264, 476 A.2d 534, 535 (1984) (quoting *Emmons v. Emmons*, 141 Vt. 508, 511, 450 A.2d 1113, 1115 (1982)). Furthermore, "we may affirm a correct judgment even though the grounds stated in support of it are erroneous." *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990). Thus, the scope of our review is limited to determining whether the court's conclusions are legally supportable.

## II.

We need not reach the issues of implied warranties in sales by builder-vendors, or covenants of title in a warranty deed, which formed the basis of the trial court decision, to decide whether the trial court erred in awarding the Wyatts attorney's fees and court costs. Merger did not extinguish the Palmers' agreement to complete construction of a house on lot 39, and the express language of the purchase and sale contract adequately supports their liability for attorney's fees and court costs.

> The doctrine of merger by deed does not bar the enforcement of

. . . independent or collateral undertakings simply because they are expressed in a writing containing terms of sale which merge into the deed. . . . "[B]uild" provisions of build-sale contracts are not performed by delivery and acceptance of the warranty deed . . . .

*Worthey v. Holmes*, 287 S.E.2d 9, 10 (Ga. 1982); see also *Ting-Wan Liang v. Malawista*, 421 N.Y.S.2d 594, 597 (App. Div. 1979) ("The agreement to erect a house has been construed to be collateral to the main purpose of the conveyance and, accordingly, not subject to the doctrine of merger."). Here, the purchase and sale contract contained two distinct agreements: one for the transfer of title to lot 39 and the appurtenances thereto, which was merged into the deed and performed by the Palmers, and the other to complete the construction of a single family home on lot 39.* Because the construction agreement did not merge with the deed, the trial court properly concluded that the Palmers breached that agreement when they constructed the house such that the garage and the driveway encroached on lot 38.

Affirming the trial court's conclusion that the Palmers breached the construction agreement in the purchase and sale contract supports the court's award of the Wyatts' fees and costs. First, as provided in the purchase and sale contract, the Palmers became liable for the Wyatts'

---

*The purchase and sale contract provided that the Wyatts agreed to buy a "single family home located on Lot 39 [in the] Foothills Development." This agreement was "[s]ubject to clarification in writing between purchasers and sellers on construction details prior to July 23, 1990." The July 21, 1990 addendum on construction details merely noted that clarification of construction details had been completed.

reasonable attorney's fees and court costs for the cross-claim against defendants because the Wyatts prevailed on their breach of contract claim. Further, under the holding in *Albright v. Fish*, 138 Vt. 585, 422 A.2d 250 (1980), the Palmers are liable for the Wyatts' fees and costs for the litigation against the Langes. *Id.* at 591, 422 A.2d at 254 ("There is a substantial body of case law which holds that where the wrongful act of one person has involved another in litigation with a third person or has made it necessary for that other person to incur expenses to protect his interest, litigation expenses, including attorney's fees, are recoverable."); see also *Welch v. LaGue*, 141 Vt. 644, 647, 451 A.2d 1133, 1135 (1982) (affirming vendor's liability for purchaser's attorney's fees from litigation against third party resulting from vendor's breach of covenant to convey marketable title). The interest paid by the Wyatts on the line of credit to finance the cost of litigation also falls within the *Albright* rule and should be affirmed on that basis. *Albright*, 138 Vt. at 591, 422 A.2d at 254 (reasonable litigation *expenses* recoverable where wrongful act of one party has involved another in litigation with third person).

The court erred, however, in awarding the Wyatts damages for the lost opportunity to refinance their mortgage at lower interest rates. Although an aggrieved party may recover consequential damages for breach of contract, consequential damages are subject to the limitations of causation, certainty, and foreseeability. *Id.* at 590, 422 A.2d at 254. "Consequential damages are recoverable where they 'may be reasonably supposed to have been in the contemplation of both parties[,] at the time they made the contract, [as the probable result of the breach of it].'" *Id.* (quoting *Norton & Lamphere Constr. Co. v. Blow & Cote, Inc.*, 123 Vt. 130, 136, 183 A.2d 230, 236 (1962)). In *Albright*, the plaintiffs sought damages for interest on loans for the purchase of,

and future property taxes on, a parcel of land they purchased as a result of the defendants' breach of a restrictive land covenant. We concluded that such damages were not the type that could ordinarily be considered to result from the breach of a restrictive covenant. *Id.* The same can be said about the damages in this case. Damages for the lost opportunity to refinance a mortgage are not the foreseeable result of a breach of a construction contract. The award of these damages is reversed.

### III.

The Palmers claim the court erred in awarding damages for the parcel of land the Wyatts did not accept and in determining its value. We reverse on the valuation issue as well as on the question of the Palmers' liability for these damages. In this case, the Palmers liability for the value of the parcel is supported only by the theory that they negligently misrepresented the boundaries of lot 39 to the Wyatts. The trial court concluded only that the Palmers negligently represented the boundary of lot 39, but failed to examine the other elements of a negligent misrepresentation claim, such as justifiable reliance. Restatement (Second) of Torts § 552(1) (1977). Because the court's analysis is insufficient to support liability, we remand for a more complete analysis.

In the event the court finds liability for negligent misrepresentation, it must then reconsider the valuation of the parcel not conveyed as well. At trial, the court apparently relied exclusively on Mr. Wyatt's testimony in determining the value of the parcel. He was the only witness who valued the parcel at $4000, the sum the court awarded. Other testimony indicated that the land was worth between $1500 and $3000. A landowner is competent to testify as to the value of his property, 12 V.S.A. § 1604; Mr. Wyatt, however, did not own the parcel in question. It was error, therefore, to rely on Mr. Wyatt's testimony in assessing the value of the land.

In addition, assessing damages involves more than simply comparing the size of the disputed parcel to the size of the whole lot and awarding a like proportion of the purchase price, because the value of different areas of the lot may be unequal. *Hudson v. McClaskey*, 641 N.E.2d 36, 41 (Ind. Ct. App. 1994) (where grantee deprived of use of any part of tract, damages equal value that specific part contributed to value of whole tract). A proper analysis will entail consideration of both qualitative and quantitative factors to account for differences in both size and utility. See *id.* (proportional value, not just quantity of land, should be measure of damages).

### IV.

In their cross-appeal the Wyatts contend that Mr. Palmer is liable for fraudulent misrepresentation and that the court erred in failing to award punitive damages. The trial court found no credible evidence of intentional misrepresentation. This finding is not clearly erroneous. Indeed, as the court noted, common sense dictates that if the Palmers knew the correct boundary they would have sited the house differently. The court did not err in denying punitive damages. We agree with the court as well that the damages requested for marital strain and anxiety are too remote to be considered a foreseeable result of a breach of a construction contract.

*The awards of damages for lost opportunity to refinance the mortgage and for the value of the parcel not conveyed are reversed, and the case is remanded on the issue of defendants' liability for negligent misrepresentation; otherwise, affirmed.*