First Am. Title Ins. Co. v. Wolfe, No. 110-5-10 Oecv (Eaton, J., Sept. 26, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                         CIVIL DIVISION
Orange Unit                                            Docket No. 110-5-10 Oecv

First American Title Insurance Co.
          Plaintiff

v.

Robert Wolfe
          Defendant

v.

Daniel W. Ewald, Esq.,
Reis, Urso, Ewald & Anderson, PLLC, Jane Harrington,
and Millenium Real Estate, Inc. d/b/a Coldwell Banker Watson Realty
          Third-Party Defendants


Decision on Motion for Partial Summary Judgment

At issue is the proper measure of damages when an attorney's negligence has caused a purchaser of residential property to receive less acreage than he expected. Also at issue is whether attorney fees are recoverable as an item of damages under the circumstances of this case. Both questions have been raised by a motion for partial summary judgment filed by "third-party defendants" Daniel Ewald, Esq., and Reis, Urso, Ewald & Anderson, PLLC. See *Price v. Leland*, 149 Vt. 518, 521 (1988) (explaining standard of review for summary-judgment motions).

The following material facts are established by the record. In 1985, George and Irene Rich purchased property consisting of a dwelling house and about ten acres of land. In their deed, the property was described as consisting of "a parcel of 10.1 acres, . . . with buildings thereon," but the property was then "more particularly described" as consisting of two separate parcels of somewhat-unclear size. It is not clear from the record whether the separate parcels were ever merged into one single lot.

In 2005, the Riches surveyed the property and subdivided it into three separate lots. The first lot was subdivided so as to consist of the dwelling house and 2.5 acres of land; it was sold to Alexander and Tonia Stevenson by warranty deed in 2005. The second and third lots were subdivided to consist of the remaining acreage and were sold to Michael Lanier in 2006.

Meanwhile, the Stevensons obtained a mortgage on their property. Somehow, however, their mortgage deed mistakenly described the mortgaged premises as encompassing the entire 10.1 acres formerly owned by the Riches. The mistaken description persisted throughout

subsequent foreclosure proceedings and was eventually included in the foreclosure judgment and the confirmation order without being discovered.

Wells Fargo Bank purchased the property at the foreclosure sale, and subsequently sold it to defendant Robert Wolfe. As part of the real-estate closing, Mr. Wolfe obtained a title opinion from Attorney Ewald, who certified title without discovering the mistaken description. As such, at closing, the bank gave Mr. Wolfe a special limited warranty deed describing the property as consisting of a dwelling house with 10.1 acres of land. Mr. Wolfe thereafter discovered the mistake and filed a claim with his title-insurance company, plaintiff First American Title Ins. Co., for the missing acreage.

First American retained an appraiser to determine the value of the property as insured under the title policy (10.1 acres plus a residence) as compared to the value of the parcel conveyed (2.5 acres plus a residence). The appraiser provided an opinion that the difference between what was purchased and what was expected to be purchased was $9,000. After the parties failed to settle for this amount, First American filed a declaratory action against Mr. Wolfe, and he filed the present counterclaim for legal malpractice against Attorney Ewald and his law firm.

Attorney Ewald argues in his present motion for partial summary judgment that $9,000 is the correct measure of damages because it represents the difference between what defendant actually purchased and what defendant expected to purchase, citing 3 Mallen & Smith, Legal Malpractice § 21:4 (2012 ed.) and *Smith v. Childs*, 437 S.E.2d 500, 509 (N.C. Ct. App. 1993).

In response, Mr. Wolfe hired an appraiser who opined that the fair market value of the two undeveloped lots now owned by Lanier are worth $45,000 each, or $80,000 if sold together. Mr. Wolfe argues that this is the correct measure of damages because it represents the actual measure of his loss, which is the fair-market value of the property that he did not receive. In support of his position, he cites to the same treatise as Attorney Ewald and also to *Chase v. Hoosac Tunnel & Wilmington Ry. Co.*, 85 Vt. 60, 62 (1911), which is best understood as a statement of the measure of damages for tortious destruction of property (in that case, an engine spark that ignited a forest fire), and as such, is not particularly apposite here.

A successful malpractice plaintiff is generally entitled to damages representing the loss of the expected benefits of the transaction plus the consequential damages caused by the attorney's mistake, with the caveat that ordinary rules of proximate causation apply. *Bloomer v. Gibson*, 2006 VT 104, ¶ 27, 180 Vt. 397; 3 Legal Malpractice, *supra*, at § 21:1. Hence, damages must be measured with reference to the nature of the attorney's undertaking for the client and the character of the attorney's error. *Keister v. Talbott*, 391 S.E.2d 895, 899 (W.Va. 1990); 3 Legal Malpractice, *supra*, at § 21:4. In a malpractice action involving property rights, the measure of the lost benefit is "the difference between what such property is worth and what it should have been worth but for the attorney's negligence," based upon the circumstances existing at the time of the error. 3 Legal Malpractice, *supra*, at § 21:4.

In this case, if the facts regarding defendant's expectations were slightly different, this court would not quibble with the theory that damages should be measured by reference to the fair-market value of the two undeveloped lots. In particular, if the facts were to show that defendant expected to receive three subdivided lots (and that the mistaken deed had actually called for such a property transfer), then a title attorney who failed to discover the prior conveyance of two of the lots should be held liable for the loss of the expected benefits of the transaction: the fair-market value of the two missing lots, as measured by the price that a willing buyer would pay for them in an arms-length transaction, e.g., *Barrett v. Town of Warren*, 2005 VT 107, ¶ 6, 179 Vt. 134; Legal Malpractice, *supra*, at § 21:4.

However, there does not appear to be a factual basis in the record for the conclusion that defendant expected to receive three subdivided lots. As best as the court can determine from the present record, defendant expected to receive the property that was described in his special limited warranty deed. As noted above, it is not entirely clear whether defendant expected to receive one parcel with 10.1 acres and a house or instead two subdivided parcels, but either way, the measure of damages in this case must be tethered to proof of what defendant expected to receive in this transaction but for his attorney's negligence. *Bloomer*, 2006 VT 104, ¶ 27; 3 Legal Malpractice, *supra*, § 21:1. In other words, if malpractice damages are to be cabined by a principle of proximate causation, then the proper measure of damages in this case must be the fair-market value of the property that defendant *expected* to receive.

At the present, pre-discovery stage, the facts surrounding defendant's expectations remain unclear. If it turns out that he expected to receive one parcel with 10.1 acres of land and a house, then the proper measure of damages would be the difference between the fair-market value of a parcel with 10.1 acres and a house and the fair-market value of one parcel with 2.5 acres and a house. If he expected to receive two subdivided parcels, then the proper measure of damages would be the present fair-market value of the missing parcel. Other factual permutations may be possible. At present, however, the court cannot find an evidentiary basis that would support the conclusion that defendant actually expected to receive three subdivided parcels, such that the proper measure of damages would be in accordance with defendant's appraisal. For these reasons, partial summary judgment is not appropriate at this time, but the court hopes that the foregoing discussion provides sufficient guidance to the parties going forward.

The second question is whether defendant is entitled to recover attorney fees as an element of damages in this action. At issue is the scope of the common-law doctrine known as the "collateral litigation exception," which provides that attorney fees are recoverable when "the wrongful act of another has involved another in litigation with a third person or has made it necessary for that other person to incur expenses to protect his interest." *Albright v. Fish*, 138 Vt. 585, 591 (1980); see also *Wyatt v. Palmer*, 165 Vt. 600, 602 (1996) (mem.); *Welch v. LaGue, Inc.*, 141 Vt. 644, 647 (1982). Defendant argues that he is entitled to application of this doctrine in this case because he has been "forced to defend a suit brought by his own title insurer as part of its effort to avoid compensating its ensured for the fair market value of the insured property," and that he has moreover been "put to the task of asserting third-party claims against other potentially culpable parties in an effort to preserve his legal rights."

Application of the collateral-litigation exception generally requires a showing that the action for which attorney's fees are claimed as consequential damages was "brought or defended by third persons—that is, persons not privy to the contract, agreement or events through which the litigation arises." *Albright*, 138 Vt. at 591 (quotation omitted).[1] In this case, there has been no showing that defendant has become embroiled in a lawsuit with a third person who was "not privy to the contract, agreement or events through which the litigation arises." The facts instead show that defendant discovered a discrepancy in his deed and filed a claim with his title insurer, who responded by filing a declaratory action to determine the amount of damages that should be awarded on the claim. Defendant then brought the present malpractice claims against his attorney and fraud-based claims against the real-estate broker. Defendant has not offered any cases supporting the conclusion that attorney fees should be awardable under the collateral-litigation exception for suits initiated to resolve his own title-insurance claim or to prosecute allegations of fraud against a real-estate broker. Nor has defendant proffered a basis for an exception from the general rule that he must bear his own attorney expenses incurred in prosecuting the legal-malpractice action. 3 Legal Malpractice, *supra*, at § 21:6. As such, the third-party defendants are entitled to partial summary judgment on the application of the collateral-litigation exception.

## ORDER

For the foregoing reasons, the Motion for Partial Summary Judgment filed by Daniel E. Ewald, Esq., and Reis, Urso, Ewald & Anderson, PLLC (MPR #2), filed Apr. 23, 2012, is ***denied*** as to the measure of damages and ***granted*** as to the issue of the application of the collateral-litigation exception.

Dated at Woodstock, Vermont this _____ day of September, 2012.


_____
Harold E. Eaton, Jr.
Superior Court Judge

---

[1] The statement of the rule in *Albright* does not entirely explain the outcome in *Bourne v. Lajoie*, 149 Vt. 45, 53 n.3 (1987), which appears to allow an award of the attorney fees incurred by a vendor of land in bringing a reformation action against the purchasers of land to correct a mistaken deed. *Bourne* is inapposite here, however, because the present case does not involve attorney fees incurred in a suit as between a vendor and a purchaser or attorney fees incurred as an expense of correcting an attorney's mistake relating to prior litigation (as was the situation in the out-of-state cases cited by *Bourne* on page 53 and in footnote 3). Nor does *Bourne* suggest that an attorney should be required to finance claims against a real-estate broker for misrepresentation and consumer fraud; it can hardly be suggested that the attorney's negligence was somehow directly responsible for alleged fraudulent conduct of another. As such, the *Bourne* footnote does not apply here.

4