**M.R. HUDSON, Mary Hudson, Vandegrift and A.B. Hudson, Appellants,**

v.

**Marvin Randall McCLASKEY, Appellee.**

No. 82A04–9402–CV–74.

Court of Appeals of Indiana, Fourth District.

Oct. 11, 1994.

Rehearing Denied Dec. 12, 1994.

38

F. Wesley Bowers, David E. Gray, Cedric Hustace, Bowers, Harrison, Kent & Miller, Evansville, for appellants.

Jack N. Van Stone, Evansville, for appellee.

RILEY, Judge.

### STATEMENT OF THE CASE

Defendants–Appellants M.R. Hudson, Mary Hudson Vandegrift, and A.B. Hudson (collectively below, Hudson) appeal an award of damages and costs in favor of Plaintiff–Appellee Marvin Randall McClaskey (McClaskey).

We affirm in part and reverse in part.

### ISSUES

Hudson presents the following issues for our review:

1. Whether the trial court erred in allowing witness Shaffer to testify as an expert on valuation of land.

2. Whether the damage award to McClaskey was proper.

3. Whether the trial court erred in awarding costs of defense, in the form of attorney and engineering fees, to McClaskey.

4. Whether the trial court erred in compounding interest on the damage award.

McClaskey raises the following issue on cross-appeal:

1. Whether there was sufficient evidence to support the trial court's award of a set-off to Hudson.

## FACTS AND PROCEDURAL HISTORY

On December 21, 1984, Hudson conveyed a 41.83 acre parcel of property to McClaskey by warranty deed. Prior to this conveyance, the State of Indiana had acquired an easement over 8.59 acres of this real estate. The warranty deed McClaskey received, however, did not reveal the existence of the State's easement.

In November of 1986, pursuant to a project to widen U.S. 41, the State initiated condemnation proceedings against McClaskey seeking to appropriate that portion of McClaskey's real estate which abutted the highway. McClaskey attempted to defend the State's action on the basis that the easement was invalid. He also filed a cross-complaint against Hudson for breach of warranty.

The trial court held the easement was valid and also entered summary judgment in favor of Hudson. The summary judgment was appealed and reversed. *See McClaskey v. Bumb and Mueller Farms, Inc.* (1989), Ind. App., 547 N.E.2d 302. The cause was then remanded to the trial court to determine what remedy McClaskey should receive as a result of the breach of warranty. The trial court's judgment on this issue ultimately reached our supreme court. In *Hudson v. McClaskey* (1992), Ind., 597 N.E.2d 308, 309, the supreme court affirmed this court's finding that rescission was not a proper remedy. The court then remanded to the trial court with directions "to conduct a hearing to determine all proper damages to be awarded [McClaskey] resulting from [Hudson's] breach of warranty." *Id.*

A hearing was held on the issue of damages. Following the hearing, the trial court made the following findings of fact and conclusions of law.

### FINDINGS OF FACTS

1. The Court of Appeals has previously decided the issue of liability in favor of McClaskey and against the Hudsons.

2. The fair market value of the Real Estate which is the subject matter of this litigation on December 21, 1984, without an easement, was $80,000.

3. The fair market value of the Real Estate which is the subject matter of this litigation on December 21, 1984, with an easement, was $20,000.

4. The Diminution of Value of the real estate by reason of the Breach of Warranty is $60,000.

5. At the time of the purchase and sale of the property, McClaskey executed a mortgage to the Hudsons ... which mortgage bears interest at the rate of twelve percent (12%) per annum.

6. Ten percent (10%) per annum is the statutory interest to be applied to McClaskey's recovery in this case.

7. Interest on $60,000 is to be computed from December 21, 1984, until satisfaction.

8. George Barnett, Sr. gave notice to the Hudsons on December 12, 1985, that the State of Indiana was claiming an easement and if the State would be successful, McClaskey would demand damages for Breach of Warranty.

9. The Hudsons were parties to this lawsuit from the beginning and therefore had notice that the State was claiming title to the easement.

10. McClaskey retained Barnett & Barnett, attorneys, and Jack N. VanStone, attorney, to represent him in defending his title.

11. Barnett & Barnett and Jack N. VanStone charged McClaskey $12,061.92 attorney fees for defending his title.

12. $12,061.92 is a reasonable fee for the services rendered to McClaskey by Barnett & Barnett and Jack N. VanStone defending his title in this cause.

13. McClaskey incurred engineering expenses in the process of defending his title in this case in the amount of $2,699.00.

14. The total cost of defending title, including attorneys fees and engineering costs incurred and paid by McClaskey was $14,760.92.

15. The statutory interest on the total cost of defending title shall be ten percent (10%) per annum.

16. At the time of the filing of the Cross–Claim for foreclosure by the Hudsons against McClaskey, McClaskey was not in default of his mortgage nor has he been thereafter.

17. McClaskey is entitled to judgment on the Cross–Claim of foreclosure.

18. The Hudsons are entitled to recover on the set-off of the note and mortgage given by McClaskey for the purchase of the property.

19. To the extent any Finding of Fact may be construed as a Conclusion of Law, such is/are incorporated into the Court's Conclusions of Law.

## CONCLUSIONS OF LAW

1. The Court of Appeals has previously decided the issue of liability in favor of McClaskey and against the Hudsons.

2. McClaskey is entitled to recover damages for Breach of Warranty of Title in the amount of $60,000 with interest at ten percent (10%) per annum from December 21, 1984, in the amount of $85,760.11 until satisfaction.

3. McClaskey is entitled to recover the total cost of defending title of $14,760.92 with interest at ten percent (10%) per annum from the date the expenses were paid in the amount of $12,965.33 until satisfaction.

4. McClaskey is entitled to judgment on the cross-claim of foreclosure.

5. The Hudsons are entitled to recover on the set-off of the note and mortgage given by McClaskey for the purchase of the property.

6. To the extent any Conclusion of Law may be construed as a Finding of Fact, such is/are hereby incorporated into the Court's Findings of Fact.

### JUDGMENT

IT IS THEREFORE ... ordered .. that McClaskey recover from [the Hudsons'] judgment in the amount of $173,486.36 with interest at ten percent (10%) per annum from the date of this Judgment until satisfaction.

IT IS FURTHER ORDERED, ... that [the Hudsons] recover on the set-off of the note and mortgage given by McClaskey for the purchase of the property.

\* \* \* \* \* \*

(R. 42–45).

### STANDARD OF REVIEW

On appeal, this court affords special findings a two-tier standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215, *reh'g denied.* The judgment of the trial court will be affirmed if this court concludes that the special findings support the judgment and are not clearly erroneous. *ITT Industrial Credit Co. v. R.T.M. Development Co., Inc.* (1987), Ind.App., 512 N.E.2d 201, 203; Ind. Trial Rule 52(A). A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County,* 530 N.E.2d at 1215.

In reviewing the court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. We consider only the evidence in the record which supports the judgment along with the reasonable inferences to be drawn from the evidence. We will disturb the trial court's findings only if the record is devoid of facts or inferences to support the findings. *Moody v. Moody* (1991), Ind.App., 565 N.E.2d 388, 390.

### DISCUSSION AND DECISION

#### I. EXPERT WITNESS TESTIMONY

Hudson contends the trial court erred in allowing Lee Shaffer to testify as an expert on the value of the property. Hudson argues that Shaffer's lack of formal training in appraisal of property should have disqualified him from "expert" status.

The competency of a witness to testify as an expert is a matter for the trial court to determine and is subject to its discretion. *Hegerfeld v. Hegerfeld* (1990), Ind.App., 555 N.E.2d 853, 855. Competency to testify is

"to be determined by [the witness'] knowledge of the subject matter generally, whereas his knowledge of the specific subject of the inquiry goes to the weight to be accorded to his opinion." *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 901 (quoting *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 365). Simply stated, the witness is competent if he has "sufficient skill and knowledge in the field to aid the trier of fact in its search for the truth." *Id.* (quoting *Underhill v. Deen* (1982), Ind.App., 442 N.E.2d 1136, 1139).

In the present case, Shaffer testified that he was an Auctioneer, Real Estate Broker, and Appraiser with Kurtz Auction and Realty Company. He further testified that he had taken a number of appraisal courses and had experience as an agent buying and selling real estate. Shaffer's work experience, coupled with his more formal training, was sufficient to aid the trier of fact in determining the value of the property in question. Accordingly, the trial court was justified in admitting his testimony as an expert and there was no abuse of discretion in doing so.

## II. PROPRIETY OF THE DAMAGE AWARD

McClaskey presented three witnesses on the issue of the diminution of the value of the land. Frederick Bumb, a farmer who had farmed the land for thirty-one years, testified that only eighteen acres of the land was suitable for farming because of lack of drainage. He further testified that the farm land was worth $1000.00 per acre. He characterized the remainder of the property as a "swamp." (R. 68). Shaffer testified that without the easement the land was worth $3000.00 per acre because of its commercial development potential. He further testified that the property was worth only $450.00 to $625.00 per acre with the easement. McClaskey himself testified that the property was worth $80,000.00 without the easement, and $20,000.00 with the easement.

 The manner of measurement for damages caused by breach of warranty is rooted in antiquity. In *Sherwood v. Johnson* (1902), 28 Ind.App. 277, 62 N.E. 645, 646, the court held that "evidence of the value of the property, with or without the incumbrance by which the damages for the breach of the covenants are estimated, must be confined to the date of the conveyance." The court further held that inquiry into the purpose for acquisition of the land is inadmissible because that purpose "does not enter into the covenants." *Id.* The covenants "bind the covenantor that he is seized of the land, and that he will warrant and defend the title, or, in default thereof, that he will return the purchase money and interest, or, if the title fail[s] in part, that he will return a ratable proportion of the purchase money and interest." *Id.* The value of the whole tract conveyed at the time of the conveyance is the true consideration, and if the grantee is deprived of the use of any part of the tract, the measure of the damages is "the value which that specific part of the land bore to the value of the whole land conveyed." *Id.* Measurement is not determined by relating the quantity of the land purchased to the residue left over after the incumbrance is discovered, because "the value may be unequal." *First National Bank of Cambridge City v. Colter* (1878), 61 Ind. 153, 160. Accordingly, "[t]he true and just rule is, that the proportional value, and not the quantity of the several parts of the land, should be the measure of damages." *Id.*

 Hudson contends that Shaffer's testimony regarding the value of the property was inadmissible because it was based on sales of comparable property made in 1993, nine years after the conveyance of the property in question. We note that Shaffer testified that with the easement, the land was only good for farm land, and that the price of farm land of this type (i.e., land prone to annual flooding because of its low elevation) was fairly consistent between the period of 1984 and 1993.[1] Accordingly, the price of comparable property was relevant to the

---

1. In fact, Shaffer testified that the price of this type of land was "somewhat higher" in 1984 than it was in 1993. (R. 235).

price of the property sold in 1984. Shaffer's testimony was therefore admissible.[2]

██ Hudson further contends that the testimony was insufficient to establish the value of the specific part of the land encumbered as related to the value of the residue. However, our analysis of the evidence indicates otherwise. Shaffer testified that with the easement McClaskey was left with farm land valued at $450.00 to $625.00 per acre. Bumb testified that with the easement McClaskey was left with eighteen acres of farm land worth $1000.00 per acre. McClaskey himself testified that with the easement he was left with property worth $20,000.00 instead of $80,000.00.[3] Thus, with the easement, the property was worth an amount as low as $14,958.00 and as high as $20,775.00. Simple subtraction from the $80,000.00 paid for the property places the value of the land taken by the State as ranging from $59,225.00 to $65,042.00. The $60,000.00 value placed by the trial court upon the land taken is within the range of the evidence.

██ Hudson also contends the trial court erred in relying on the testimony of McClaskey's witnesses because the witnesses assumed that the land as a whole was commercial development property and not agricultural property. Hudson states that at the time the property was acquired by McClaskey it was zoned agricultural and remains zoned agricultural to this day.[4] Hudson cites *Sherwood*, wherein the court held that inquiry into the purpose for acquisition is of no relevance in ascertaining the diminution in the value of a purchased property. 62 N.E. at 646.

Our review of *Sherwood* reveals that the propriety of evidence pertaining to the purpose for acquisition of property was not an issue before the court. Therefore the case, though accurately stating the general rule, is not helpful in illustrating how the rule should be applied to particular facts. More helpful is *Phillips v. Reichert* (1861), 17 Ind. 120, the case cited by the *Sherwood* court. In *Phillips*, the vendee paid $600.00 for property with the intent of erecting a lager-beer cellar in a ravine on part of the property. The vendee was evicted from this portion of the land by a paramount title not revealed by the vendor at the time of conveyance. The vendee argued that the diminution in value was to him $200.00 because he could not use the property for the particular purpose it was purchased for. 17 Ind. at 122. The trial court found that the vendee was entitled to damages of $30.00, an amount representing the diminution of value for ordinary purposes. *Id.* On appeal, the supreme court held that "the fact that land was bought for a particular purpose ... can make no difference in respect to the rule of damages, for a breach of the covenants." *Id.* at 123. This is true because "[t]he fact that the land was bought for a particular purpose cannot have the effect of increasing the liability thus imposed by the covenants." *Id.* This discussion followed the court's statement that where the eviction is partial, "the damages will bear the same proportion to whole purchase money, as the value of the part to which the title fails to whole premises, estimated at the price paid." *Id.* at 122.

In the present case, unlike in *Phillips*, the vendee is not attempting to garner special damages for failure of a particular purpose. Hudson had the choice of selling the property in question as commercial development property for $80,000.00 or as swampy farm land for considerably less. By choosing to sell the property for the higher amount, Hudson established commercial development as the ordinary purpose for the property.

---

2. Any error the trial court made in admitting Shaffer's testimony regarding the value of the property without the easement was harmless. The trial court correctly disregarded Shaffer's testimony and used the $80,000.00 sale price as the value of the land without the easement.

3. Hudson argues that McClaskey's testimony was not based on a foundation of competence. We decline to overturn the trial court's award on this issue for two reasons. First, Hudson did not object to McClaskey's testimony on the basis of lack of foundation at the time it was offered. Second, the evidence supports the trial court's finding even without McClaskey's testimony.

4. Hudson contends that the real reason for any diminution of the value of the land was McClaskey's failure to have the property rezoned for commercial use. We do not decide this issue because there is no evidence in the record of such a failure.

This fact was properly factored into the trial court's decision on the relation between the value of the property subject to the easement and the value of the residue. If this were not so, Hudson would reap a $60,000.00 windfall on its breach, while McClaskey would take a $60,000.00 loss.

## III. PROPRIETY OF THE AWARD OF ATTORNEY AND ENGINEERING FEES

■ Hudson contends that the trial court erred in awarding attorney and engineering fees. He argues that the trial court's award is erroneous as a matter of law because of the court's assumption that notice to Hudson of the impending action was all that was needed to warrant a subsequent award of litigation costs.

■ In Indiana, the party seeking recovery of litigation costs is generally required to tender the defense to the party who breached the covenant of warranty. *Groves v. First National Bank of Valparaiso* (1988), Ind.App., 518 N.E.2d 819, 823, *reh'g denied, trans. denied.* Stated simply, the grantee generally must give proper notice of the pendency of the suit and request or demand the grantor to defend against the same before he can recover litigation cost. *Teague v. Whaley* (1898), 20 Ind.App. 26, 50 N.E. 41, 42; 8 I.L.E. *Covenants* § 14. However, the requirement of notice and demand does not apply when the grantor is a party to the action. *Teague,* 50 N.E. at 42; 20 Am. Jur.2d *Covenants* § 154.

In the present case, Hudson was a party named in the State of Indiana's action to condemn access rights to the easement. A demand was not necessary; McClaskey is entitled to recover the costs incurred in defending against the State's claim.

■ Hudson also contends that the trial court erred in the amount of costs awarded. He cites to a statement by McClaskey's attorney, in which the attorney admitted that "the claim of [the] State of Indiana did involve two pieces of property, one of which is the subject matter of this lawsuit. The other of which is not and there was no attempt to divide the time because the defense was basically the same." (R. 195).

Our review of the record shows that McClaskey had to defend against the State's claims on the property he purchased from Hudson and on an adjoining lot. There was no attempt by McClaskey's attorneys to allocate the costs between the two purely on the basis that a large portion of the defense of the Hudson property was duplicative of the defense of the adjoining property. Because of the duplicative nature of the defenses, McClaskey, and the trial court, reasoned that it was proper to force Hudson to pay the costs attributable to the defense of both parties.

The adjoining lot was not purchased from Hudson and he should not be responsible for the costs attributable to defense on the lot. "An award of [costs] is appropriately limited to those [costs] incurred because of the basis underlying the award." *Brant v. Hester* (1991), Ind.App., 569 N.E.2d 748, 755. We remand for a further hearing as to the costs allocable to the defense of the property purchased from Hudson.

## IV. PROPRIETY OF INTEREST AWARD

■ Hudson contends that the trial court erred in compounding on a monthly basis the award of damages and expenses. McClaskey counters that the award in the present case is similar to *Weisman v. Hopf–Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, and *McClure Oil v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, *reh'g denied,* in which this court affirmed the award of compounded interest on a damage award.

Interest on a damage award "should not be compounded but calculated as simple interest." *Northern Indiana Public Service Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 161. *Weisman* and *McClure* represent the exception to the rule in that compounded interest was allowed because a contract between the parties so designated. Here, where there is no such contract, the interest award should not have been compounded. On remand, the trial court should calculate the interest as simple interest.

## V. PROPRIETY OF THE TRIAL COURT'S AWARD OF SET–OFF

 McClaskey purchased the Hudson property through a promissory note and mortgage. After McClaskey filed his claim, Hudson filed a cross-claim for the amount due on the note and a set-off if McClaskey were awarded damages. The trial court found that Hudson was entitled to recover on the set-off of the note and mortgage. McClaskey contends the set-off is improper because there was no evidence presented at trial to establish that there was a balance due.

The record shows that McClaskey failed to file an answer to Hudson's cross-claim. A response to a cross-claim, like an answer to a counterclaim, is required under our trial rules. *See* Ind.Trial Rule 7(A)(3); *Commercial Credit Corp. v. Miller* (1972), 151 Ind.App. 580, 280 N.E.2d 856, 860 (holding that an answer to a counterclaim is required under Ind.Trial Rule 7(A)(2)). The effect of failure to answer and deny is that the averments of the pleading will be deemed admitted. *See* Ind.Trial Rule 8(D); *Commercial*, 280 N.E.2d at 860. Accordingly, the trial court's finding of set-off is not erroneous. On remand the trial court should receive evidence on the exact amount of the balance which remains due and should set-off that amount from the damages awarded to McClaskey.

### CONCLUSION

The trial court did not err in allowing Shaffer to testify as an expert. Furthermore, its findings regarding the value of the diminution in value of the property caused by the incumbrance were supported by evidence and were not clearly erroneous.

The trial court was correct in awarding costs to McClaskey; however, the amount of costs awarded was improper. We remand for a determination of the proper allocation of costs.

The court erred in compounding interest on the award of damages and costs. We remand for computation of simple interest.

The court did not err in awarding a set-off; however, the precise amount of set-off should be determined on remand.

RUCKER and BAKER, JJ., concur.