## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2017, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chad D. Wuertz
Wuertz Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Stacy L. Kelley
Glaser & Ebbs
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony J. Rhea,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Marjorie Rhea,<br>*Appellee-Respondent.* | May 31, 2017<br><br>Court of Appeals Case No.<br>49A02-1611-DR-2572<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable James A. Joven<br><br>Trial Court Cause No.<br>49D13-1503-DR-8513 |

**Bailey, Judge.**

# Case Summary

Anthony Rhea ("Husband") appeals the property division in the dissolution of his marriage to Marjorie Rhea ("Wife"). We affirm.

# Issues

Husband presents two issues for review:

I.   Whether the trial court abused its discretion by precluding Husband's realtor from testifying as an expert on the value of real properties owned by the parties; and

II.  Whether the trial court abused its discretion by deviating from a presumptive 50/50 split of the marital pot.

# Facts and Procedural History

The parties were married on May 19, 1995. On March 16, 2015, Husband filed a petition for dissolution of the marriage.

At that time, Husband and Wife owned three real properties in Marion County, Indiana. The property located on Priscilla Avenue had been purchased and occupied by Wife prior to the marriage. It was the initial marital home, but was later converted to exclusive use as a day care center. The property located on East 23rd Street had been purchased and renovated for re-sale. The property on Bluestem had been the second marital home. It had been occupied by Husband post-separation and was in foreclosure at the time of the final hearing. A

private sale was pending, but for a purchase price of less than the two mortgages and expenses of sale.

[5] Provisional hearings were conducted in July, August, and September of 2015. A final hearing was conducted on October 17 and 18, 2016. The marriage was dissolved pursuant to a decree entered on November 3, 2016. Wife received 58% of the marital assets and Husband received 42%. This appeal ensued.

# Discussion and Decision

## Exclusion of Testimony

[6] Husband argues that his realtor should have been allowed to testify as an expert on the value of real properties owned by the parties. The competency of a witness to testify as an expert is a matter for the trial court to determine and is subject to its discretion. *Hegerfeld v. Hegerfeld*, 555 N.E.2d 853, 855 (Ind. Ct. App. 1990). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Dillard v. Dillard*, 889 N.E.2d 28, 32 (Ind. Ct. App. 2008). An abuse of discretion also occurs when the trial court has misinterpreted the law. *Id.*

[7] Wife requested that she be awarded the properties on Priscilla Avenue and East 23rd Street. She obtained written appraisals for the properties, with assigned values of $67,000.00 and $203,500.00, respectively. The appraisals were admitted into evidence at the final hearing. Husband disagreed with those

values but did not submit into evidence an alternate appraisal. Rather, he called as a witness Merrill Moores ("Moores"), the attorney and real estate agent who was handling the short sale of the Bluestem property,[1] to "rebut" the appraisals. (Tr. Vol. I at 158).

[8] At the commencement of his testimony, Moores stated that he was a licensed real estate agent and a practicing attorney who did not have a real estate appraiser's license. He testified that he did appraisals "for divorces" and for "his own purposes seeking listings." (Tr. Vol. I at 152.) Husband's counsel asked Moores if he had "looked at" the Priscilla Avenue property and Wife objected that Husband was eliciting speculative testimony unsupported by documentation. (Tr. Vol. I at 155.) Wife asked a "preliminary question" of Moores, and Moores confirmed that he had not compiled a written appraisal. (Tr. Vol. I at 156.) Wife moved to exclude Moores' testimony as irrelevant.

[9] In the ensuing bench conference, the trial court characterized Wife's objection as an objection to Moores' qualifications as an expert, and stated that a lay witness is not permitted to give opinion testimony. The trial court inquired whether Husband's counsel had authority for the proposition that someone other than a licensed appraiser could testify concerning real estate value; counsel responded that he did not currently possess such authority; and the trial court ruled that Moores could not give opinions regarding properties other than

---

[1] Moores testified without objection regarding the progress of the Bluestem property sale and the anticipated proceeds.

the Bluestem property. Husband was afforded the opportunity to make an offer of proof. Counsel summarized:

> If allowed to testify, this witness would testify that the valuation of Priscilla property – or the property at Priscilla would be in a market analysis that he performed looking at comparable properties, at or above $80,000, I think $82 to $85, additionally that the property that would be the 23rd Street address, in the neighborhood it is with the transition of the market that's there, the actual evaluation of it would be $270 – or $265,000 to $275,000 in a normal market condition; substantially higher than what the – the appraisal has been offered and opposing party's documents.

(Tr. Vol. I. at 165.)

[10] On appeal, Husband directs our attention to Indiana Code Section 25-34.1-3-8. This statute permits a person licensed as a real estate broker to appraise real estate in Indiana for compensation, although he or she is not licensed or certified as a real estate appraiser. Husband then argues that the trial court made a mistake of law in concluding that Moores was unqualified to render an opinion as to real estate values.

[11] Pursuant to Indiana Code Section 25-34.1-3-8, a real estate broker may accept compensation for performing a real estate appraisal even if the broker does not have an appraiser's license. However, this statute does not directly concern the qualifications of an expert witness to offer evidence. Indiana Rule of Evidence 702(a) addresses testimony by expert witnesses, providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

[12] Nevertheless, whether a real estate broker may offer valuation testimony in some circumstances[2] is beside the point in this case. Even assuming Moores is qualified and competent to conduct a property-specific appraisal, he did not perform that function here. As indicated in the offer of proof, his anticipated testimony was based upon an undocumented market analysis. The offer of proof did not explain the methodology for or scope of a market analysis, and Husband made no claim that Moores had examined the subject properties beyond looking inside. In these circumstances, the trial court was within its discretion to conclude that Moores' valuation testimony would not assist in the determination of a fact in issue.

## Deviation from Presumptive Split

[13] Pursuant to Indiana Code Section 31-15-7-5, the trial court shall presume that an equal division of the marital property between the parties is just and reasonable. The presumption may be rebutted by relevant evidence, including evidence concerning the following factors:

---

[2] *See e.g., Hudson v. McClaskey*, 641 N.E.2d 36, 41 (Ind. Ct. App. 1994) (the trial court did not abuse its discretion in permitting expert testimony of land value by an auctioneer/broker/appraiser who allegedly lacked formal appraisal training but had taken several appraisal courses).

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

    (A)   before the marriage; or

    (B)   through inheritance or gift.

(3) The economic circumstances of each spouse at the time of the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A)   a final division of property; and

    (B)   a final determination of the property rights of the parties.

[14]    Wife was awarded 58% of the marital estate and Husband was awarded 42%. Husband argues that the deviation amounted to clear error because (1) Wife's counsel, in the written proposed order, improperly expanded upon the oral direction of the trial court; (2) Wife's testimony as to her day care earnings is

contradicted by evidence of her cash flow; and (3) Husband was hindered in the presentation of evidence relative to his retirement plans.

[15] On October 25, 2016, the trial court detailed an administrative event in the Chronological Case Summary:

> Comes now the court and directs counsel for [Wife] to submit a Decree that adopts the stipulations of the parties and divides the marital estate in accordance with Exhibit Q from trial. Husband shall pay $10,000 of Wife's attorney fees due to disparities in income and discovery issues. Court finds that a deviation of the 50/50 presumption is appropriate given the property Wife brought into the marriage, the disparity in incomes and economic circumstances as they leave the marriage. Husband owes Wife $1,500 for maintenance for Sept-Nov.

(App. at 13.) In the Decree of Dissolution, the reasons for deviation have been expanded to include "the actions of the parties during the pendency of this matter." (Appealed Order at 3.) It appears that counsel followed the trial court's directive but then took some liberty in drafting.[3] However, the trial court adopted the additional grounds in counsel's submission. Ultimately, even if a trial court has adopted verbatim a party's proposed findings and conclusions, causing a lower level of confidence that findings reflect the independent judgment of the trial court, the task of this Court is to review for

---

[3] Husband makes a cursory allegation that the Decree also improperly referenced a stipulation, when the parties had none. As Husband points out, the final hearing began with the parties denying that they had made any stipulation. However, during a break in the final hearing, the parties reached an agreement as to personal property and advised the trial court accordingly. This stipulation was properly included in the Decree.

clear error the findings as adopted. *Kitchell v. Franklin*, 26 N.E.3d 1050, 1058 (Ind. Ct. App. 2015).

[16] When reviewing a property division, we begin with a strong presumption that the trial court considered and complied with the applicable law governing property division. *Perkins v. Harding*, 836 N.E.2d 295, 299 (Ind. Ct. App. 2005). We cannot substitute our judgment for the trial court's, even if the evidence could have supported a different property distribution. *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004). We decide whether the decision distributing property constitutes an abuse of discretion, considering only the evidence most favorable to the court's disposition of the property. *Estudillo v. Estudillo*, 956 N.E.2d 1084, 1092 (Ind. Ct. App. 2011).

[17] At the time of the final hearing, Wife was receiving Social Security payments of $947.00 per month. Her 2015 tax return indicates that her net annual income from the operation of a day care center was $421.00 per year. She testified that she was in 2016 earning $87.00 per week in net income. Husband's income for the prior year consisted of wages of $126,530.00. He had earned $63,090.79 for January through May of 2016. As such, there was evidence to support the finding of disparate economic circumstances. Wife testified that she had owned the Priscilla Avenue property when the parties got married. This supports the finding that Wife brought property into the marriage. As for the conduct during the proceedings – the basis for the finding that Wife's counsel added and the trial court adopted – there was testimony that Husband was ordered to pay the mortgage on the Bluestem property during his tenancy there, but did not do so

despite regular income. Ultimately, the Bluestem property was sold in a short sale after foreclosure proceedings were commenced. This evidence supports the determination that Husband's conduct negatively impacted the net marital estate available for division. In sum, the deviation is amply supported by the evidence.

[18] Husband argues, however, that certain evidence should be disregarded. That is, he focuses upon the testimony that Wife nets $87.00 weekly from the day care center together with the testimony that the Priscilla Avenue property was owned free of any mortgage. Ignoring Schedule C of the 2015 tax return indicating that Wife took in gross proceeds of $60,648.00, Husband insists that it is a "financial impossibility" for Wife to have maintained the "cash flow" for a mortgage payoff if she earns only $87.00 per week. (Appellant's Brief at 15.) His argument represents a stark request to reweigh evidence. We decline the invitation. *See Estudillo*, 956 N.E.2d at 1092 (recognizing that we do not reweigh the evidence nor assess witness credibility when reviewing a property distribution decision).

[19] Finally, Husband asserts that the finding of disparate incomes rests upon an assumption that he will continue working, yet he was not offered a meaningful opportunity to introduce evidence of his need to retire. Husband directs our attention to a colloquy between Husband's counsel and the trial court, during which counsel suggested that sixty-two "is retirement, Judge." (Tr. Vol. II at pg. 189.) The trial court disagreed and expressed the view that, in the absence of medical necessity, a claim of plans for early retirement would likely not be

accorded much evidentiary weight. Thereafter, Husband testified that he is a diabetic. He did not, however, claim that his retirement was imminent or that his early retirement would be medically necessary. Husband's cursory argument in this regard is, at bottom, an additional request to reweigh the evidence. Husband has not demonstrated that the trial court abused its discretion by deviating from the presumptive 50/50 split.

# Conclusion

[20] The trial court did not abuse its discretion by precluding valuation testimony concerning two of the marital real properties. The trial court's order of property division is supported by the evidence and does not constitute an abuse of discretion.

[21] Affirmed.

Vaidik, C.J., and Robb, J., concur.